NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

BRADLEY STEPHEN LEKER, *Appellant.*

No. 1 CA-CR 14-0085
FILED 7-23-2015

Appeal from the Superior Court in Maricopa County
No.  CR2011-008197-001
The Honorable Christine E. Mulleneaux, Judge Pro Tempore

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Charles R. Krull
*Counsel for Appellant*

Bradley Stephen Leker
*Appellant*

---

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Jon W. Thompson joined.

---

**P O R T L E Y**, Judge:

**¶1** This is an appeal under *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). Counsel for Defendant Bradley Leker has advised us that after searching the entire record, he has been unable to discover any arguable questions of law, and has filed a brief requesting us to conduct an *Anders* review of the record. Leker has filed a supplemental brief.

### FACTS[1]

**¶1** Officer Kurtz responded to a disturbance call on January 22, 2011, at a Mesa apartment complex. As Officer Kurtz arrived, he saw a person who matched the description he received from dispatch get into a van, but then get out and quickly enter an apartment. When Officer Kurtz started walking towards the apartment, a person, who was later identified as the tenant of the apartment, started talking to Officer Kurtz. During that discussion, the man came out of the apartment. He was subsequently identified as Leker.

**¶2** Officer Kurtz tried to ask Leker questions in the parking lot, as Officer Cash arrived. Leker was speaking over Officer Kurtz, and began to raise his voice. Leker then took out his cell phone and tried to make a call. Both officers told Leker to put his phone away, and when he refused, Officer Cash put out her hand and asked Leker to give her the phone. Leker pulled his hand away and tried to move away from the officers. When the officers tried to grab Leker's phone, he began swinging his arms at the officers.

---

[1] We view the facts "in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *State v. Rienhardt*, 190 Ariz. 579, 588-89, 951 P.2d 454, 463-64 (1997).

¶3          Both officers grabbed Leker to arrest him, but he shoved, flailed, and hit both officers as they wrestled him against his van.  Leker kicked Officer Kurtz in the groin and leg.  The officers wrestled Leker to the ground.  And after Leker tried to grab Officer Cash's gun, she tased him three times before the officers were able to subdue him.

¶4          Leker was originally indicted on two counts of aggravated assault, class 5 felonies, and one count of resisting arrest, a class 6 felony. Eleven months later, the State successfully moved to dismiss the charges without prejudice.  The State then re-indicted Leker on two counts of aggravated assault, class 5 felonies, one count of resisting arrest, a class 6 felony, and one count of aggravated assault, a class 3 felony.  Leker twice asked for an examination under Arizona Rule of Criminal Procedure 11, and both times, after examination, he was found competent to stand trial.

¶5          Leker filed a motion to dismiss the charges with prejudice for prosecutorial vindictiveness.  He argued the State only dismissed the original charges after he turned down its plea offer and then the State re-indicted him adding a new, more serious charge.  After a hearing, the court denied Leker's motion because the State left the original plea offer open for two weeks after filing its motion to dismiss.  The court, as a result, found that his re-indictment was not a punishment for turning down the plea.

¶6          At trial, the jury found Leker guilty of all four counts, and he was subsequently sentenced to three years of probation, with the condition that he would spend six months in jail and receive a mental health evaluation before being released.  The court also gave Leker credit for four days of presentence incarceration.

¶7          Leker appealed.  We have jurisdiction over this appeal pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).[2]

---

[2] We cite the current version of the applicable statutes absent changes material to this decision.

**DISCUSSION**

¶8        In his supplemental brief,[3] Leker argues that the trial court erred by failing to address prosecutorial misconduct, admitting improper evidence, and failing to admit proper evidence.  Leker also alleges several other general complaints regarding the trial.[4]

(A)  Discovery Claims

¶9        Leker first contends that the State engaged in prosecutorial misconduct by refusing to answer several discovery requests.  Specifically, Leker points to unanswered discovery requests for the full Mesa Police Department internal affairs investigation report of both officers, any camera footage or reports surrounding the deployment of Officer Cash's taser, patrol camera footage, and all responding officers' names and records.

¶10        Leker did not raise the discovery issue with the trial court, so we will only review it for fundamental error.  *See State v. Dixon*, 226 Ariz. 545, 549, ¶ 7, 250 P.3d 1174, 1178 (2011) (stating that "[b]ecause [there was] no claim of prosecutorial misconduct below, we review for fundamental error").  "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Hughes,* 193 Ariz. 72, 79, ¶ 26, 969 P.2d 1184, 1191 (1998) (citation and internal quotation marks omitted).

¶11        Here, Leker only requested the full internal affairs investigation report, taser reports, and taser camera footage.  Leker did not request the patrol camera footage or the names and records of all of the responding officers.  Moreover, the requested information was not required to be produced during initial disclosure under the Arizona Rules of Criminal Procedure.  *See* Ariz. R. Crim. P. 15.1(b)(1) (requiring State to

---

[3] Although Leker cites the record, he does not point to any legal authority supporting any of his contentions.  *See* Ariz. R. Crim. P. 31.13(c)(1)(vi) (argument shall contain "citations to the authorities, statutes and parts of the record relied on"); *see also* ARCAP 13(a)(7)(B) ("For each contention, references to . . . the applicable standard of appellate review with citation to supporting legal authority.").  We, however, will address the issues.

[4] Leker also alleges that recordings of the trial have been tampered with but has not substantiated his allegations.  Moreover, we have found no discrepancy between the recording and the transcript to support his allegation.  Consequently, we will not address this argument.

disclose only the names and addresses of all witnesses it intends to call at trial); 15.1(b)(9) (requiring the State to disclose whether electronic surveillance of defendant's conversations had occurred); *see also State v. Kelley*, 110 Ariz. 196, 198, 516 P.2d 569, 571 (1973) (finding that defendant was not entitled to discovery of certain evidence when defendant did not request it with discovery procedures). If Leker wanted the additional information and the State was tardy or refused to produce it, he was free to move to compel disclosure under Rule 15.7, and seek sanctions, if appropriate. *See* Ariz. R. Crim. P. 15.7(a). As a result, the failure of the State to timely respond to the request is not prosecutorial misconduct.

**¶12** Leker also asserts that the State engaged in misconduct by only disclosing the results of the internal affairs report instead of disclosing the entire report. Again, although the State gave Leker the required results of the internal affairs investigation, he did not request the entire report at that time or later, and did not ask the court to compel discovery. *See* Ariz. R. Crim. P. 15.7 (establishing a process to compel discovery and sanctions). Because Leker received what was requested, there was no prosecutorial misconduct. *See Pima Cnty. v. Harte*, 131 Ariz. 68, 69, 638 P.2d 735, 736 (App. 1981) (finding defendants are not entitled to "carte blanche" access to internal affairs records, but are allowed records of prior complaints about an officer's past violent tendencies).

(B) Exclusion of Evidence

**¶13** Leker also contends that the court erred by excluding evidence about the landlord-tenant dispute that resulted in the police being called to the apartments. He, however, does not explain the relevance of the dispute to whether he committed the acts that resulted in his conviction. We review a "trial court's decision to exclude evidence for [an] abuse of discretion." *State v. Villalobos*, 225 Ariz. 74, 82, ¶ 33, 235 P.3d 227, 235 (2010). "If evidence has no probative value, it is inadmissible under Rule 401." *State v. Oliver*, 158 Ariz. 22, 28, 760 P.2d 1071, 1077 (1988); Ariz. R. Evid. 402 ("[i]rrelevant evidence is not admissible"); Ariz. R. Evid. 401(a) (defining relevant evidence as evidence that "has any tendency to make a fact more or less probable").

**¶14** Here, the issue being tried was whether Leker assaulted the police officers and resisted arrest. The information about the dispute between Leker, which involved his sister and the tenant, was not relevant to the trial because he never told the police about the dispute, and even if the nature and reason for the dispute was allowed, the evidence would not have helped the jury to decide whether Leker assaulted the officers and

resisted arrest.[5]   Therefore, the trial court did not abuse its discretion excluding evidence about the landlord-tenant dispute and Leker's role in that dispute.

**¶15**    Leker also argues that the court erred by allowing the State to ask a number of witnesses about the results of the internal affairs investigation because the investigative findings were hearsay.  Because there was no hearsay objection to the questions, we review the issue for fundamental error.  *See State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20, 115 P.3d 601, 607 (2005).

**¶16**    Even if we assume, without deciding, that the results of the investigation were hearsay, their admission would not amount to fundamental error.  Ordinarily, "if hearsay evidence is admitted without objection, it becomes competent evidence admissible for all purposes," and "absent fundamental error, the failure to object is a waiver of any error." *State v. Allen,* 157 Ariz. 165, 170–71, 755 P.2d 1153, 1158–59 (1988) (citation and internal quotation marks omitted).   The erroneous admission of hearsay constitutes fundamental error when it provides "the sole proof of an essential element of the state's case" and the defendant could not otherwise have been convicted by competent evidence in the record.  *Id.* at 171, 755 P.2d at 1159 (citation and internal quotation marks omitted).

**¶17**    Here, Leker only objected to the State's questions on the basis of relevance, but not as hearsay.  After reviewing the record, and assuming the statements were hearsay, the testimony about the results of the internal affairs investigation about the officer's use of force was not fundamental prejudicial error.  The jury heard from both officers who testified about the facts of their encounter with Leker, his behavior, and their need to subdue him and how they did so.  J.L., an independent witness who saw the scuffle, also testified about how Leker struggled with the officers.  The jury was able to watch those witnesses and determine their credibility.  And the jury was properly instructed on all of the elements of each offense. *See State v. Newell,* 212 Ariz. 389, 403, ¶ 68, 132 P.3d 833, 847 (2006) (noting that we presume the jury follows the court's instructions absent evidence to the contrary).  As a result, any alleged error in the admission of the results of the investigative report did not result in fundamental prejudicial error

---

[5] If Leker, for example, had explained the situation to the police before attempting to make the call, the evidence about the dispute, his role in it as well as the facts giving rise to the assault and resisting arrest would have been relevant.  Because he did not, the landlord-tenant dispute was not relevant to determining his conduct towards the police officers.

warranting a new trial because if we exclude the hearsay statements there was sufficient evidence to sustain the convictions.

**¶18** Leker also argues that the trial court improperly admitted a photo of his injured finger that distracted the jury from his other more serious injuries. Leker, however, misperceives what happened. The trial court, in response to a juror question, asked Officer Cash a question regarding a picture of Leker's injured finger that was already admitted into evidence. Because the exhibit had been admitted along with other exhibits, the jurors were free to ask questions about the exhibit.

**¶19** In Arizona, jurors are allowed to ask questions of a witness. A juror has to write the question out, have it presented to the judge, and the court, at its discretion and subject to objections from either party, can ask the testifying witness the question. *See* Ariz. R. Crim. P. 18.6(e); *State v. Greer*, 190 Ariz. 378, 379-80, 948 P.2d 995, 996-97 (App. 1997). Thus, the court did not err in allowing the question about Leker's finger, given that the jury had all the exhibits, including the pictures depicting all his injuries at the time they went to deliberate.

### (C) Juror Challenges for Cause

**¶20** Leker next contends that the trial court erred in striking prospective jurors 41, 1, 13 and 34 for cause.[6] We disagree.

**¶21** Rule 18.4(b) requires a court to excuse potential jurors "[w]hen there is reasonable ground to believe that a juror cannot render a fair and impartial verdict." *See State v. Eddington*, 226 Ariz. 72, 78-79, ¶ 17, 244 P.3d 76, 82-83 (App. 2010). A trial court retains broad discretion under Rule 18.4(b) to "determine [w]hen there is [a] reasonable ground to believe that a [potential juror] could not be fair and impartial." *Eddington*, 226 Ariz. at 79, 244 P.3d at 83 (citation and internal quotation marks omitted). We review a court's decision to strike potential jurors for abuse of discretion. *State v. Prince*, 226 Ariz. 516, 528, ¶ 26, 250 P.3d 1145, 1157 (2011).

---

[6] Leker also contends that the State improperly struck prospective jurors who were sympathetic to him. However, absent a discriminatory motive to strike a prospective juror, the State, as well as the defendant, may use its peremptory strikes to remove prospective jurors. *See State v. Hernandez*, 170 Ariz. 301, 305-06, 823 P.2d 1309, 1313-14 (App. 1991); Ariz. R. Crim. P. 18.4(c)(1)(ii).

¶22 Here, potential juror 41 expressed hostility towards the State. Counsel noted that potential juror 1's body language indicated bias against Leker, and potential jurors 13 and 34 stated they could not judge only the evidence presented before the jury. The prospective jurors' statements and actions were enough, when raised to the court, for the trial court to decide that they could not be impartial, or would not follow the law. As a result, the record does not reveal that the court abused its discretion in striking the four jurors for cause.

(D) Officers Attended the Complete Trial

¶23 Leker also contends that the trial court erred by allowing both Officers Cash and Kurtz to be present during the entire trial because they were witnesses. We disagree.

¶24 Both officers were considered to be victims because they had been assaulted. Under the Victim's Bill of Rights, victims in Arizona have a constitutional "right '[t]o be present at . . . all criminal proceedings where the defendant has the right to be present." *State v. Lindsley*, 191 Ariz. 195, 199, 953 P.2d 1248, 1252 (App. 1997) (quoting Ariz. Const. art. II, § 2.1(A)(3)); *see* A.R.S. § 13-4401(19); Ariz. R. Crim. P. 39(b)(4) (providing that a victim has a right to be present at all criminal proceedings). Because Officers Cash and Kurtz were alleged victims of Leker's criminal acts, they were entitled to be present at all the criminal proceedings. Thus, the trial court did not err in allowing the officers to be in the courtroom for all of the proceedings.

(E) Ineffective Assistance of Defense Counsel

¶25 Finally, Leker contends that his lawyer made strategic errors during trial that caused him prejudice. Our supreme court, however, has directed that any claim for ineffective assistance of counsel cannot be raised on direct appeal, but must be raised afterwards in a petition for post-conviction relief under Arizona Rule of Criminal Procedure 32. *See State ex rel. Thomas v. Rayes*, 214 Ariz. 411, 415, ¶ 20, 153 P.3d 1040, 1044 (2007) (noting that "a defendant may bring ineffective assistance of counsel claims *only* in a Rule 32 post-conviction proceeding—not before trial, at trial, or on direct review"). Because Leker can raise the ineffective assistance of counsel claim pursuant to Rule 32 with the trial court, we will not consider the argument.

(F)   Fundamental Error Review

¶26      In reviewing Leker's arguments, we have read and considered the entire record for reversible error. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. We find no reversible error. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. The record reveals that Leker was represented by counsel at all stages of the proceedings, and the sentences imposed were within the statutory limits.

¶27      After this decision is filed, counsel's obligation to represent Leker in this appeal has ended. Counsel must only inform Leker of the status of the appeal and Leker's future options, unless counsel identifies an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Leker may, if desired, file a motion for reconsideration or petition for review pursuant to the Arizona Rules of Criminal Procedure.

**CONCLUSION**

¶28      Accordingly, we affirm Leker's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama