356 N.W.2d 813 (1984)
In re the Marriage of: M.N.D., petitioner, Appellant,
v.
B.M.D. Respondent.
No. C0-84-136.
Court of Appeals of Minnesota.
October 30, 1984.
*815 Allan Swen Anderson, Granite Falls, for appellant.
Janice M. Nelson, B.W. Christopherson, Nelson, Oyen, Torvik, Minge, Christopherson & Gilbertson, Montevideo, for respondent.
Gregory L. Holmstrom, Carlson, Reishus & Holmstrom, Granite Falls, guardian ad litem.
Heard, considered and decided by LANSING, P.J., and WOZNIAK and FORSBERG, JJ.

OPINION
LANSING, Judge.
The father appeals from an amended judgment reducing visitation with his four-year-old daughter to four hours per month to be supervised by a neutral party, based on a finding that he sexually abused the child. The mother and the child's guardian ad litem also appeal on the ground that the trial court erred in allowing the father any visitation rights until he completes a treatment program for sex offenders. We affirm.

FACTS
The parties were married in August 1978. At the time of the marriage the father was 22 years old and the mother was 16. They separated in September 1979, and the dissolution decree is dated September 1980. The mother was given custody of their only child, and the father's visitation was eventually arranged to be a one-week stay at his home in Canby, Minnesota, every five weeks.
In early 1982 the mother was living in an apartment above the home of her aunt in St. Paul. At that time the two women began noticing behavior changes in the child, who was then three years old. They observed her inserting items into her rectum and trying to insert objects into the vagina and rectum of another child. She also tried to insert a pencil into a hole in the genital area of a doll. She occasionally had difficulty controlling her bowels. She told the aunt that her father put petroleum jelly and baby powder on her bottom. When questioned further, the child said she could not tell anything more because her dad said it was a secret.
The mother contacted the authorities and had the child evaluated at the Wilder Child Guidance Center. The Wilder report states that during the evaluation the child refused to say anything until her mother and aunt left the room. After they left, the child demonstrated with sexually explicit dolls how "daddy dolls rubbed vaseline on girl dolls," with the doll lying unclothed in a face-down position.
In August 1982 the mother moved to terminate the father's visitation, but the court instead ordered visitation to take place only in the home of the father's parents while they or other family members were present. The court ordered a child custody study and appointed a guardian ad litem for the child.
The mother also had the child evaluated by Dr. Georganne Farseth, a licensed consulting psychologist. The child told Dr. Farseth that the father had inserted his finger into her rectum "lots of times" when she had visited him at his house, but that it had never happened at her grandparent's home. She stated that only her father had ever touched her in that manner and that she would tell her grandmother, but not her mother, if it ever happened again.
After the child was treated at the Wilder Clinic she completely stopped inserting items into her rectum, according to her *816 mother. Immediately after a visit with her father in late February 1983, however, the mother noticed that during a bath the child had inserted a fork into her rectum. The mother arranged another appointment with Dr. Farseth. Demonstrating with sexually explicit dolls, the child told Dr. Farseth that her father had put a finger into her rectum while she was supposed to be napping in a bedroom at her grandparent's home. Some of his sisters were in the house but were unaware of what had happened, according to the child. Her father told her not to tell anyone about it. She stated, "Daddy will get mad if he finds out I told." She also indicated that some time before he had put his fingers into her vagina.
The mother then obtained an order restraining all visitation pending a hearing to terminate the father's visitation. The father moved for a change in custody on the ground of false accusations of child abuse and denial of visitation.
A two-day hearing took place in April 1983. The child was interviewed in chambers but would not talk to the judge. In August the court ordered the father's visitation reduced to four hours per month in St. Paul, to be supervised by a neutral party. The court specifically found that the child was a competent witness and that her statements, as relayed through the reports admitted into evidence and the witnesses who testified, had to be accepted as true.

ISSUES
1. Is the evidence sufficient to support a restriction of visitation?
2. Were the child's statements to others about the sexual abuse inadmissible hearsay?
3. Did the trial court err in refusing to admit the results of two polygraph tests and other miscellaneous documentary evidence?
4. Did the trial court err in refusing to terminate visitation until the father completes a treatment program for sex offenders?

ANALYSIS

I
Appellant contends the evidence is insufficient to support the restriction of his visitation rights. Minn.Stat. § 518.175, subd. 5 (1982) provides that a court may modify visitation rights whenever modification would serve the best interests of the child. The court may not restrict visitation rights, however, unless it finds that visitation is likely to endanger the child's physical or emotional health or emotional development. The trial court's decision in visitation matters will not be reversed absent a clear abuse of discretion. Griffin v. Van-Griffin, 267 N.W.2d 733 (Minn.1978); Hennessy v. Stelton, 302 Minn. 550, 224 N.W.2d 926 (1974).
In addition to the evidence detailed above, Dr. Farseth testified that the child's behavior in inserting items into her rectum was consistent with sexual abuse. During three separate visits the child had consistently described her father's actions and had labeled the female doll with her own name and the male doll "Daddy." She specifically denied that anyone other than her father had ever abused her.
The father's evidence is inconclusive. His family testified that they had not left him alone in the house with the child. He testified that he did not abuse her. His family physician testified that there was no physical evidence of abuse; however, he had examined the child at a time when she had not seen her father for about five months. A psychiatrist testified only that appellant's psychological tests were within normal limits.
The father argues that it is impossible for him to prove that he did not abuse his child, and we recognize the difficulties involved in presenting his case. In the context of a change in visitation, however, we are dealing with a right that can be restored. We believe the "best interests of the child" standard is flexible enough to *817 accommodate both the safety of the child and the visitation rights of her father. We therefore hold that the trial court did not err in restricting appellant's visitation rights because the evidence is sufficient to show that the child's physical and emotional health were endangered.

II
The father also contends that the trial court should have excluded all evidence containing the child's statements on competency and hearsay grounds. His attorney made a standing objection at the beginning of the trial to "any conversation regarding any of the statements of the child."
The trial court found that the child was competent within the meaning of Minn.Stat. § 595.02 and § 595.06 (1982), specifically, that she was bright, alert, and had well-developed "receptive and expressive abilities" for her age. A trial court's findings as to the competency of a child or any other witness may be overturned only for a clear abuse of discretion. State v. Amos, 347 N.W.2d 498, 501 (Minn.1984). We find nothing in the record to indicate that the trial court erred.
Despite the father's standing hearsay objection, the record shows that his attorney specifically stated "no objection" when respondents offered the Yellow Medicine and Ramsey County custody studies, which contained all the reports by Ramsey County child abuse investigators, the Wilder Clinic, and the St. Paul police department. Appellant offered many of the same reports himself during the hearing (Petitioner's Exhibits 1, 2, 3, & 6). He also offered two written reports by Dr. Farseth, which were attached to the restraining order (Petitioner's Exhibit 13). All of these exhibits were received and, along with the aunt's and Dr. Farseth's testimony, are the sole source of the hearsay at issue.
This court could hold that the father's objection was either insufficient or waived because he failed to object to the reports and proceeded to introduce the evidence himself. See Jones v. Fleischhacker, 325 N.W.2d 633, 639 (Minn.1982). However, neither party argued the waiver issue, and the hearsay is central to the decision in this case. We will therefore address the hearsay issue on the merits.
Many of the problems present in this case  the lack of witnesses and corroborative physical evidence, and the reluctance or inability of the child to testify  are also present in criminal prosecutions for sexual abuse. See Note, A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases, 83 Colum.L.Rev. 1745, 1745-46 (1983). Because of these unique circumstances and the gravity of the problem, there is usually a compelling need for the victim's hearsay statements. Id. at 1749. Furthermore, there is some authority that children's hearsay statements made near the time of the event are more likely to be accurate than in-court testimony given much later. Id. at 1750 & n. 50. The rules governing admission of hearsay must therefore consider both the rights of the accused and the interests of the victim. At a minimum, such statements must either fall within a firmly rooted hearsay exception or possess particularized guarantees of trustworthiness. Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).
The trial court admitted the statements as being made for the purpose of medical diagnosis and treatment. Minn.R.Evid. 803(4). The advisory committee note for the federal rule indicates that statements to nonphysicians, such as hospital attendants, ambulance drivers, and family members, are included in this exception. Statements as to fault, however, do not generally qualify. Fed.R.Evid. 803(4) advisory committee note.
Respondent suggests that the statements should be admitted as corroborative evidence, citing State v. Blohm, 281 N.W.2d 651 (Minn.1979). In Blohm the court admitted as nonhearsay statements made by a rape victim to her mother and doctor, because they were offered for corroborative purposes and were not meant to prove the truth of the matter asserted. Id. at *818 652; see also State v. Kruse, 302 N.W.2d 29, 31 (Minn.1981) ("details of the complaint, even if not substantively admissible, were admissible to corroborate complainant's testimony"). However, because the child did not testify, there was no reason to allow corroborative evidence.
We believe a sounder basis for allowing such statements is the residual hearsay exception in Minn.R.Evid. 803(24). We hold that a child's hearsay statements may be admitted under this rule if they have "equivalent circumstantial guarantees of trustworthiness," id, demonstrated by analyzing the time, content, and circumstances under which they were made, see Note at 1761-64. In addition, the court must determine that the statements (1) are offered as evidence of a material fact, (2) are more probative than other evidence reasonably available, and (3) are consistent with the general purposes of the rules and the interests of justice. Minn.R.Evid. 803(24). The rule also requires notice before trial of intent to use the hearsay statements. See id.
Our decision to allow hearsay under these circumstances is influenced by an amendment to Minn.Stat. § 595.02 (1982). That statute, as amended, provides that the out-of-court statements of children under the age of ten regarding any act of sexual contact or penetration not otherwise admissible by statute or rule of evidence are admissible. The trial court must determine, inter alia, that the time, content, and circumstances of the statement and the reliability of the person to whom it is made provide sufficient indicia of reliability. 1984 Minn.Laws ch. 588, § 4. That provision did not become effective until after the date of the hearing in this case.
The time, content, and circumstances of the child's statements indicate trustworthiness. First, there are numerous statements in the transcript by witnesses for both sides that the child is truthful, has never fabricated stories in the past, and loves her father and is reluctant to get him in trouble.
Second, the child's conversation with the aunt in which she said her father used petroleum jelly and baby powder was completely spontaneous. The aunt testified:
I was getting ready for work; and she was down visiting me, as she often did when [her mother] was getting ready for school. I was sitting at my dresser curling my hair, and there was a little can about the size of baby powder on the dress[er]; and she said to me [my father] has a big can of baby powder, and I says, well, that's nice; but then I said what does he use it for. She says he puts it on my butt. I said why is your butt sore? She says no. Then I said, well, why does he put it on your butt. She says because it feels good; and I said, well  * * * what else does [your father] do that feels good; and she says, I can't tell you; and I said why not; and she says it's a secret, and I said you can tell Auntie a secret. * * * Her whole expression changed. She got a panicked look on her face; and she says [my father] has a mirror, you know, and was diverting the whole thing from what she originally said. * * * [A] few minutes later she says [my father] has vaseline, too.
The aunt testified that she made a shorthand note of the conversation because she was upset and wanted to remember it in the child's words.
Third, the child's statements remained consistent in every report by every social worker and psychologist over a two-year-period. Fourth, the trial court found that the child was a competent witness who could understand and communicate well for her age. Fifth, the child's abnormal behavior itself and the fact that it tended to occur after visits with her father are circumstantial guarantees that her statements are true. See State v. Langley, 354 N.W.2d 389 at 398 (Minn.1984) (hearsay statements of a battered woman regarding past assaults admitted under residual exception in Minn.R.Evid. 804(b)(5) because they were corroborated in part by her behavior).
*819 There is no question that the statements go to a material issue, that they are more probative than any other evidence, and that the purposes of justice are served by admitting them. Although the mother did not give the formal notice of intent to use the statements that is contemplated by Rule 803(24), appellant received copies of all the material long before the hearing and introduced most of it himself. We find that he received adequate notice that the statements would be used. The statements are therefore admissible under Rule 803(24) of the Minnesota Rules of Evidence.

III
The trial court excluded the results of two polygraph tests and other documentary evidence that appellant contends should have been admitted. The rule is long established in Minnesota that polygraph test results are inadmissible in both criminal and civil actions because there is insufficient evidence of their reliability. See State v. Michaeloff, 324 N.W.2d 926, 927 (Minn.1982) (citing State v. Goblirsch, 309 Minn. 401, 246 N.W.2d 12, 15 (1976)); C.M.C. v. A.P.F., 257 N.W.2d 282, 283 (Minn.1977)). Furthermore, there is no due process right to admission of polygraph test results. United States v. Gordon, 688 F.2d 42, 44 (8th Cir.1982) (citing United States v. Bohr, 581 F.2d 1294, 1303 (8th Cir.), cert. denied, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978)). The court therefore did not err in excluding these results.
The other evidence offered at trial includes a letter from the county sheriff indicating that no criminal proceedings were pending against appellant, a letter of recommendation for the father's family from a Canby school principal, and a letter from a former foster child who "straightened out" while living with the family. These items are irrelevant, and the trial court's decision to exclude them was not an abuse of discretion.

IV
The mother and the child's guardian ad litem contend the trial court erred in allowing appellant any visitation at all. They urge the court to deny all visitation until appellant can demonstrate that he has successfully completed a recognized program for treatment of sex offenders. This request is based on Dr. Farseth's recommendation.
The trial court's decision allows the father to maintain contact with his daughter while ensuring her safety by requiring a neutral party's presence. The decision was not clearly erroneous.
During oral argument the father's attorney stated that the father has not exercised his visitation rights or attempted to contact the child because the designated neutral party is the aunt, and the father is afraid of being "framed" by her. If the father sincerely wishes to see his daughter, he can arrange for another neutral party or ask the county welfare department for supervision. See Minn.Stat. § 518.175, subd. 5 (1982). The weight of the district court file indicates that he is thoroughly familiar with the procedures involved.

DECISION
The trial court did not err in restricting the father's visitation to four hours per month in the presence of a neutral party, in admitting the child's hearsay statements, in excluding polygraph test results, or in refusing to completely terminate visitation.
Affirmed.