[No. 14454–5–I. Division One. September 23, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANK I. GITCHEL, *Appellant.*

James E. Lobsenz of *Washington Appellate Defender Association*, for appellant.

*Seth Dawson, Prosecuting Attorney*, and *S. Aaron Fine, Deputy*, for respondent.

COLEMAN, J.—Frank Gitchel appeals from his conviction for first degree statutory rape of his 3-year-old daughter, who is referred to herein as "R". Gitchel alleges that the trial court erred in finding the child to be incompetent to testify and in admitting her hearsay statements under RCW 9A.44.120, Washington's child victim hearsay exception.[1]

■ Although Gitchel did not raise the issue of jury unanimity at trial, he alleges now that this requirement was not satisfied in his case and that the error is one of constitutional magnitude which may be raised for the first time on appeal. The State, urging us to reconsider *State v. Fitz-*

---

[1]Gitchel also contends that RCW 9A.44.120 is unconstitutional, arguing that it deprives a defendant of his right to confrontation under U.S. Const. amend. 6 and Const. art. 1, § 22 (amend. 10). This issue was decided adversely to Gitchel's contention in *State v. Ryan*, 103 Wn.2d 165, 170, 691 P.2d 197 (1984) (citing *Ohio v. Roberts*, 448 U.S. 56, 65–66, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980)).

*gerald,* 39 Wn. App. 652, 694 P.2d 1117 (1985), responds that the requirement is not constitutional and therefore may not be raised for the first time on appeal. *Fitzgerald* holds that the right to a unanimous verdict is derived from the fundamental constitutional right to a trial by jury, and the issue may be raised for the first time on appeal. *Fitzgerald,* at 655; *see also State v. Franco,* 96 Wn.2d 816, 831 & n.6, 639 P.2d 1320 (1982) (Utter, J., dissenting); *State v. Stephens,* 93 Wn.2d 186, 190–91, 607 P.2d 304 (1980). We decline the State's invitation to reconsider this holding. The *Fitzgerald* reasoning is sound and is consistent with our interpretation of our Supreme Court's comments on the subject. Consequently, we accept review of the jury unanimity issue.

### JURY UNANIMITY

To ensure jury unanimity in cases involving separate criminal acts (rather than a charge of one offense which may have been committed by "alternative means"), the State may elect the criminal act upon which it will rely for conviction. Alternatively, the trial court may instruct the jury that all 12 members must agree that the same underlying criminal act has been proved beyond a reasonable doubt. This instruction must be given when the State does not elect the criminal act. *State v. Petrich,* 101 Wn.2d 566, 569–70, 572, 683 P.2d 173 (1984); *Fitzgerald,* at 656.

The information in the present case alleged that Frank Gitchel engaged in sexual intercourse with his daughter "on or about June to July, 1983". At trial, the State offered evidence of two incidents of sexual abuse. The first incident, on July 2, 1983, was presented through physical evidence observed by witnesses and through R's relatives' responses to their observations of R.[2] The second incident, on July

---

[2]Witnesses observed redness and rawness in R's vaginal area, a large bruise on her pubic bone, and a white sticky substance in her vaginal area. Dr. Runyon, the physician who examined R later that month on July 21, 1983, found that her vaginal opening was abnormally large. The doctor concluded that there could have been partial penetration of the vagina.

21, 1983, was demonstrated by means of R's hearsay statements, other physical evidence, and R's conduct. The acts are connected by the fact that the victim is the same; however, under *Petrich,* at 571, and *Fitzgerald,* at 655, this connection is not enough to find that the acts form one continuing offense or a single transaction. The State made no election, and the trial court did not give the instruction specified in *Petrich.*

▇ When the State does not elect and no instruction is given to ensure jury unanimity, the error may be deemed harmless only if a rational trier of fact could find that each incident was proved beyond a reasonable doubt. *Petrich,* at 573. The State concedes, and we agree, that in this case, the error cannot be considered harmless. A rational trier of fact could have entertained a reasonable doubt as to whether an act of sexual intercourse was established with respect to the July 2 incident. We reverse and remand for a new trial.

Because the issues of competency and admissibility of R's statements under RCW 9A.44.120 may arise on retrial, we address them here. We note, however, that if R is capable of testifying on retrial, the following discussion may be moot.

### COMPETENCY OF CHILD VICTIM

Gitchel contends that the trial court abused its discretion in ruling that R was incompetent. He asserts that R was capable of remembering past events and expressing them, and that everything she said confirmed his own trial testimony.

In *State v. Ryan,* 103 Wn.2d 165, 171–72, 691 P.2d 197 (1984), our Supreme Court clarified the meaning of the child victim's competency in a trial where the State seeks admission of the child's hearsay statements under RCW 9A.44.120. Under RCW 5.60.050(2),[3] only children who are

---

[3]RCW 5.60.050(2) provides:

"The following persons shall not be competent to testify:

". . .

"(2) Children under ten years of age, who appear incapable of receiving just

incapable of perceiving or truthfully relating the facts of the case are classified as incompetent. *Ryan,* at 172; *see also* CrR 6.12(c) (court rule regarding competency of children). The trial court must determine competency by examining the child and observing her manner, intelligence, and memory. *Ryan,* at 172.

■ In the present case, after hearing the child and other witnesses testify during the pretrial proceeding, the trial court ruled that R was incompetent to testify at trial but that R's statements made on the morning of July 21, 1983, to her Aunt Christine and to a Child Protective Services social worker, Pauline LaPierre, as well as R's statements to Dr. Runyon that afternoon and her statements in an interview with Detective Bob Rozzano on July 25, 1983, were admissible under RCW 9A.44.120. In determining whether R's statements were reliable, the judge found that R was "telling the truth" when she made her statements. He stated that "there is nothing implausible or inconsistent or incoherent in the content of her statements" and "everyone who has testified states that they can communicate with her and she can communicate with others." The court rejected the possibility that R was dissembling, was programmed by her relatives, or was mistaken or confused and concluded that R was competent at the time she made her statements to each of the witnesses.

However, the court observed that at the pretrial hearing, R was "squirming, looking around, hiding her face, closing her eyes, making grimaces and really nothing of substance could be obtained from her in the way of testimony." Although R was able to receive just impressions and relate them truly when she made the statements, she was not able to do so in the atmosphere of a courtroom several months after the event. The trial court did not abuse its discretion in finding R incompetent to testify.

---

impressions of the facts, respecting which they are examined, or of relating them truly."

ADMISSIBILITY OF STATEMENTS UNDER RCW 9A.44.120

The child victim hearsay statute[4] requires a preliminary determination "that the time, content, and circumstances of the statement provide sufficient indicia of reliability . . .", and, if the child does not testify, the statute requires a showing of unavailability. *Ryan,* at 170. When the child is unavailable and the statements are reliable, the proponent of the child's hearsay statements must show corroborative evidence of the act. *Ryan,* at 168, 174.

## A
### AVAILABILITY

■ Gitchel contends that the trial court erroneously based its determination of R's unavailability on her incompetency, an approach that he argues is prohibited by *Ryan.* The *Ryan* court distinguished incompetency from unavailability and noted that incompetency would not always or necessarily establish unavailability. *Ryan,* at 171–72. In this case, however, the witness' incompetency was the equivalent of unavailability.[5] The State and the defense attempted to elicit testimony from R at the pretrial hear-

---

[4]RCW 9A.44.120 provides in relevant part:

"A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings in the courts of the state of Washington if:

"(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

"(2) The child either:

"(a) Testifies at the proceedings; or

"(b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act."

[5]One of our Supreme Court Justices, another former Justice of that court, and several authorities consider a finding of incompetency to be the equivalent of legal unavailability in certain circumstances. *See, e.g., State v. Ryan,* 103 Wn.2d 165, 180, 691 P.2d 197 (1984) (Dolliver, J., concurring, and citations therein); *Ryan,* at 182 (Dimmick, J., concurring); Comment, *The Sexually Abused Infant Hearsay Exception: A Constitutional Analysis,* 8 J. Juv. L. 59, 70 & n.74 (1984).

ing, but the trial judge concluded "nothing of substance could be obtained from her in the way of testimony." In effect, the trial court concluded that she was incapable of relating facts accurately at the time she was called to testify. On this record, the trial court did not abuse its discretion in finding R to be unavailable. *See* ER 804.

We emphasize that the following examination of reliability and corroboration may be academic if, on retrial, the court finds that R is able to testify. If, however, R is not able to testify, the trial court must apply the indicia of reliability to R's statements and must analyze whether there is corroborative evidence to support her statements. Therefore, to demonstrate our agreement with the trial court's admission of R's statements and to provide some guidance on retrial, we limit our discussion of reliability and corroboration to an outline of the record as it was presented to us.

## B
### RELIABILITY

The State offered no statements by R related to the July 2, 1983 incident. R's Aunt Christine testified that on July 21, 1983, after Gitchel dropped R off at Christine's home, R complained to her cousin and Christine that it hurt to go potty. In response to Christine's question why it hurt, R stated, "Because my daddy puts his ponytail in there", and she pointed to her anus. Later, she told Christine that her daddy went "tinkle" with his ponytail.

*Ryan* lists nine factors to apply when determining whether the time, content, and circumstances surrounding the child's out–of–court declarations provide sufficient indicia of reliability. Those factors are:

"(1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness."

*Ryan,* at 175–76 (quoting *State v. Parris,* 98 Wn.2d 140,

146, 654 P.2d 77 (1982)); and

(1) the statement contains no express assertion about past fact, (2) cross examination could not show the declarant's lack of knowledge, (3) the possibility of the declarant's faulty recollection is remote, and (4) the circumstances surrounding the statement . . . are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

*State v. Ryan,* 103 Wn.2d 165, 176, 691 P.2d 197 (1984) (citing *Dutton v. Evans,* 400 U.S. 74, 88–89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970)).

■ The trial court's admission of R's statements withstands application of these factors. First, R did not appear to be dissembling and had no apparent motive to lie. R complained about pain when going to the bathroom shortly after her father dropped her off on the morning of July 21, 1982. R spoke without pressure or suggestion from the witnesses. Observing the child and reviewing the testimony, the trial court believed R was not fabricating, and we agree that the possibility of fabrication is remote. *See Johnston v. Ohls,* 76 Wn.2d 398, 406, 457 P.2d 194 (1969). *See generally* Comment, *The Sexually Abused Infant Hearsay Exception: A Constitutional Analysis,* 8 J. Juv. L. 59, 67 (1984) ("A young child is unlikely to fabricate a graphic account of sexual activity because such activity is beyond the realm of his experience." (Footnote omitted.)).

Second, although there is no direct evidence of the character of the 3–year–old child, witnesses testified that she interacted with others easily and was a normal child. Third, R's initial statements on July 21, the date of testimony regarding the second incident, were heard by her Aunt Christine and cousin; later that morning, Ms. LaPierre heard R make similar statements concerning her father's ponytail and his conduct relating to her anal and vaginal area; and later that afternoon, Dr. Runyon heard R's statements and observed behavior and physical characteristics which the doctor interpreted to be consistent with the charge of sexual abuse. Fourth, the trial court found, and

we agree, that R's statements were spontaneous. Fifth, the statements were made soon after R was dropped off at Christine's home, and in each of the instances, Christine, who is a close relative, was present.

Regarding the first *Dutton* factor, the statements were express assertions about a past fact; however, cross examination would not have shown R's lack of knowledge under these circumstances, as R demonstrated that she did not respond to questions in a courtroom setting. Even if she were capable of being cross–examined, the number of times and the circumstances in which she repeated her statement that her daddy hurt her or put his ponytail in her anus tend to establish that R's description of what occurred was credible. Finally, the facts surrounding the statements— *i.e.,* spontaneity, unusual behavior for a child of 3 years, the close timing to being dropped off by her father— diminish any possibility that R was misrepresenting Gitchel's involvement. We agree with the trial court's conclusion that R's statements bear sufficient indicia of reliability.

## C
### CORROBORATION

We also agree with the trial court's determination that the evidence corroborated R's statements regarding the July 21, 1983 incident. The court referred to Dr. Runyon's finding of partial vaginal penetration and R's inappropriate behavior during the doctor's examination. The court stated that the testimony regarding R's complaints to her cousin and aunt on July 21, 1983, was sufficiently ambiguous that R could have been pointing to either her anus or her vagina, supporting a charge that statutory rape occurred by either means on that date. Testimony about R's nightmares also corroborated the charge of sexual abuse. Taken together, under RCW 9A.44.120, this evidence could justify admission of R's hearsay statements when she was unavailable as a witness.

For the foregoing reasons, the judgment of the trial court

is reversed and the cause remanded for a new trial.

CORBETT, C.J., and SCHOLFIELD, J., concur.

Review denied by Supreme Court December 19, 1985.